# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ALTHEA S.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 20 C 2988 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| ANDREW SAUL, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§416(I), 423, about three and a half years ago and for Widow's Benefits several months after that. (Administrative Record (R. 194-200, 201-09). She claimed that she has been disabled since September of 2016 due to high blood pressure, high cholesterol, diabetes, sleep apnea, arthritis, irregular heartbeat, torn rotator cuffs, endometriosis, and hip pain. (R. 232). Over the next three years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on April 10, 2020. The parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) on June 4, 2020. [Dkt. #9]. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

# I.

## A.

Plaintiff was born on November 19, 1962, making her nearly 57 years old at the time of the ALJ's decision. (R. 255). She has an excellent work history, working consistently from 1994 to 2016. (R. 226-27). Most recently, she worked in sanitation at a cookie factory. (R. 257). The job involved walking or standing for most of the day and lifting and carrying about 50 pounds. (R. 258). Before that, she operated a cookie machine, which was medium work, but also required standing all day and constant reaching. (R. 258).

The plaintiff has numerous medical issues and, as is almost always the case, the record here is massive, with the medical evidence covering over 1100 pages. (R. 323-1459). Indeed, the record is so large that it was electronically filed in twenty separate installments, further hindering review. As such, a lengthy and tedious summary of the record will be dispensed with, as the following will give the gist of what the plaintiff has been dealing with and what the ALJ had to sift through.

As already indicated, the plaintiff has a number of medical issues: right rotator cuff injury with surgical repair, some hand numbness, mental difficulties, right knee pain, back and neck pain, ankle pain, and foot problems. (R. 374-78, 406, 460-63, 475, 569-83, 585-86, 622, 648-49, 752, 782-84, 787, 795, 1190-91). In February of 2016, plaintiff sought treatment for neck and shoulder pain. Cervical range of motion was limited upon examination, and x-rays of the cervical spine showed loss of lordotic curve, disc space narrowing at C5-6, and degenerative changes at C5-6 and C6-7. (R. 378-79, 399). Notes indicated plaintiff had previously had right shoulder surgery. (R. 374, 378).

In June 2016, plaintiff injured her left shoulder at work. (R. 620, 731). A course of physical therapy didn't work (R. 626), and she began treatment with specialist, Dr. E. Nam. The doctor found positive signs of impingement and drop arm, along with rotator cuff weakness. (R. 627). In October 2016, Dr. Nam restricted plaintiff from overhead lifting with the left arm, lifting more than five pounds below shoulder level, and pushing or pulling. (R. 627). Shoulder injections offered no improvement. (R. 629-30). Finally, on February 8, 2017, Dr. Nam performed left rotator cuff repair with decompression and debridement. (R. 620-21; 631-32).

Plaintiff then began physical therapy for her left shoulder. Notes indicated she had limited left shoulder motion and strength. (R. 651-712, 855-85, 897-902, 923-80). Shoulder strength began to improve in June 2017, and Dr. Nam recommended work limitations of no overhead work or lifting more than three pounds below shoulder level. (R. 641-42). As of June 19, plaintiff had undergone over 50 physical therapy sessions, but her range of motion and strength remained limited. (R. 712). Plaintiff then began a course with a different physical therapist. Notes from those sessions reported fluctuating shoulder pain levels, continued difficulty reaching and lifting, and ongoing strength and motion limits. (R. 715-32, 1023-83).

In August 2017, Dr. Nam felt that plaintiff would be able to transition from physical therapy to work conditioning in two weeks. (R. 645). In September, after 30 physical therapy sessions with her new therapist, plaintiff transitioned to work conditioning. (R. 731-32, 1088-1108). In November 2017, plaintiff had a functional capacity evaluation. (R. 1192-1202). At the evaluation, plaintiff was able to occasionally lift thirty pounds from the floor, occasionally carry twenty-five pounds, frequently lift twenty pounds from the floor, and frequently carry fifteen pounds. (R. 1192). She could frequently reach forward, but could not maintain pace with repetitive reaching. (R. 1193,

3

1198). She averaged 49 pounds of grip strength with her right hand, but only 17.33 with her left. (R. 1198.) She could frequently walk or stand, but only occasionally sit. (R. 1193). She had "decreased overall endurance for functional activity," and after the test felt overall fatigue and increased left shoulder discomfort. (R. 1193). Plaintiff said the reaching and lifting had aggravated her shoulder pain. (R. 1195).

On November 16, 2017, Dr. Nam said that plaintiff could "return to work to medium physical demand level per F[unctional] C[apacity] E[valuation] –permanent restrictions." (R. 1188). In January 2018, Anthony Lisuzzo, PA, who worked with Dr. Nam, repeated this opinion: plaintiff could perform lifting/carryingat the "medium" level. (R. 1223-25).

But that's just plaintiff's shoulder. Plaintiff also has lower extremity difficulties. In December 2016, Dr. Robert Markus, an orthopedic specialist, noted that left knee and foot x-rays showing mild degenerative changes. (R. 543-47). In March 2017, plaintiff sought treatment for right knee pain. (R. 536-39). In April 2017, Dr. Zachary Stender, an orthopedic surgeon, examined plaintiff regarding complaints of left hip pain and diagnosed trochanteric bursitis. (R. 526-31). The following month, physical therapy notes documented range of motion and strength deficits in both hips. (R. 891-96, 913-14). In June 2017, plaintiff exhibited positive straight leg raising, limited range of lumbar motion, limited right knee strength, and limited hip strength bilaterally. (R .983-85).

In July 2017, plaintiff sought treatment for pain in both hips from Dr.Stender. (R. 498-503). After noting right knee effusion and an antalgic gait, Dr. Stender gave plaintiff an injection in her right knee. (R. 500-01). At follow up, plaintiff continued to complain of bilateral knee pain, and x-rays showed medial compartment narrowing. (R. 496, 1413-14). Plaintiff indicated the injection had provided some relief, and Dr. Stender also injected her left knee. (R. 493-98). In October, Dr.

4

Stender noted antalgic gait and right knee effusion, and he administered another injection. (R. 1322-26).

In August 2018, plaintiff was again experiencing knee pain, along with numbness and tingling in both hands, worse on the right. (R. 1292). Dr. Stender reported findings of carpal tunnel syndrome: positive Tinel's and Phalen's signs on the right. (R. 1295). He also noted antalgic gait with knee tenderness and some effusion. (R. 1291-96). X-rays demonstrated joint space narrowing in both with both knees. (R. 1294-95). The doctor injected plaintiff's right knee again and recommended a brace for her right wrist. (R. 1296-97).

In September 2018, plaintiff began seeing Dr. J. Obert-Hong, for complaints of arm, leg, back foot, knee, and hip pain. (R. 1279-84). An MRI showed a bulging disc and moderate lumbar central canal stenosis at L3-4, mild to moderate facet joint hypertrophy at L4-L6, and a hemangioma in the right lobe of plaintiff's liver. (R. 1275, 1403). Plaintiff also had pain, numbness, and swelling in her feet. Exam revealed reduced pulse and edema in feet and lower legs, and the doctor recommended leg elevation (R. 1284-86). X-rays of both feet showed large calcaneal spurs bilaterally. (R. 1406). Also in September 2018, Dr. Panek made foot casts for custom orthotics. (R. 1454-55).

In January 2018, plaintiff underwent a consultative examination in connection with her application for benefits. Dr. E. Eze, found no range of motion limitations and reported that plaintiff had normal grip and manipulative abilities and was neurologically intact. (R. 1205-06). In February 2018, Dr. James LaFata reviewed the evidence for the Agency and opined that plaintiff could perform medium work with frequent climbing, kneeling, crouching, and crawling. (R. 80-81). In June 2018, Dr. Gotanco also reviewed the record for the Agency and signed on to that opinion. (R.

5

92-94).

**B.**

After an administrative hearing at which plaintiff, represented by counsel, testified, along with a vocational expert, the ALJ determined the plaintiff had the following severe impairments: obesity, osteoarthritis of the knees, status post bilateral rotator cuff repair, degenerative disc disease of the cervical and lumbar spine, and bilateral calcaneal spurs. (R. 19). The ALJ found that the plaintiff also had several other non-severe impairments: left hip bursitis, sleep apnea, diabetes, hypertension, hyperlipidemia, and depression. (R. 19-20). The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically mentioned considering Listing 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine). (R. 21).

The ALJ then determined that plaintiff could perform "medium work . . . except frequent climbing, kneeling, crouching, and crawling and frequent overhead reaching." (R. 21). "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). While she phrased it poorly by prefacing the list with "except", the ALJ meant that plaintiff was capable of performing those other activities frequently. (R. 68-69).

The ALJ summarized the medical evidence, noting abnormal studies of the cervical spine, lumbar spine, both knees, and both heels. (R. 22-23). She also recounted the various treatments plaintiff underwent or employed: surgery, cortisone shots, and physical therapy. (R. 22-23). The ALJ concluded that the plaintiff's "medically determinable impairments could reasonably be

6

expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." (R. 23). The ALJ explained that plaintiff's course of treatment – shoulder surgery, cortisone shots, physical therapy and over-the-counter pain medication – was conservative. (R. 23). She also found that plaintiff's activities – driving, going to a casino, walking on a treadmill – were inconsistent with her allegations regarding her limitations. (R. 24). And, according to the ALJ, the objective medical evidence did not support plaintiff's allegations either. (R. 24).

As for medical opinions, the ALJ felt the opinions from the state agency reviewing physicians that plaintiff could do medium work with frequent climbing, kneeling, crouching, and crawling, were "persuasive" because of plaintiff's conservative treatment and normal physical examinations. (R. 24). The ALJ also found a report from an occupational therapist that plaintiff was able to occasionally lift a 30-pound weight from the floor to waist level, and another report from a physician's assistant that plaintiff could stand for two hours at a time and up to six hours a day persuasive. (R. 24). The ALJ rejected the medical opinions from plaintiff's treating orthopedic physician that she was unable to do any overhead lifting or lifting of more than five pounds because they were inconsistent with the medical record. (R. 24). But she found statements that plaintiff could stand or walk for six hours a day "persuasive." (R. 24). The ALJ rejected the opinion of Dr, Nam from early in his treatment of plaintiff that she could not lift more than 3 to 5 pounds because records showed that plaintiff's functioning improved with treatment. (R. 24).

Next, the ALJ, relying on the testimony of the vocational expert, found that plaintiff could not perform her past relevant work as a janitor or as a cookie machine operator. (R. 25). While the

7

ALJ did not explain it in her Opinion, based on the vocational expert's testimony, the janitor job, as heavy work, was beyond plaintiff's capacity, and the machine operator job required more than frequent reaching. (R. 68-69). The ALJ found, continuing to rely on the vocational expert's testimony, that given plaintiff's residual functional capacity, she could perform the following work: linen room attendant (DOT 222.387-030; 2 million jobs in the national economy); laundry worker (DOT 361.684-014; 209,000 jobs); or press tender (DOT 556.685-066; 76,000 jobs). (R. 26). Accordingly, the ALJ found plaintiff not disabled and not entitled to benefits under the Act. (R. 26-27).

## II.

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole, *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019), but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

The "substantial evidence" standard is a low hurdle to negotiate. *Biestek* , 139 S. Ct. at 1154. But, in the Seventh Circuit, the ALJ also has an obligation to build what is called an "accurate and logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."). The subjectivity of the requirement – one reader's Mackinac Bridge is another's rickety rope and rotting wood nightmare – makes it difficult for ALJs hoping to write acceptable decisions that stand up to judicial scrutiny when challenged. But, at the same time, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).

### III.

As it happens, this is a "logical bridge" case in which there is a gap between the ALJ's conclusions and the evidence. As just stated, sometimes a sketchy opinion will allow the reviewing

9

court to follow how the ALJ got from the medical evidence to his RFC finding and conclusion that the plaintiff can still work. The reporters contain case after case in which medical records that depict young people, many unfamiliar with the demands of work, troubled by no more than a couple of mild impairments. Records like those allow a court to follow the reasoning of an ALJ who finds such an individual able to work on a daily basis and to follow it without a lengthy explanation. In those cases, there is not much of a "bridge" needed to make it from one side to the other. This is not one of those cases. It is often said that the district court is charged with reading the ALJ's decision as a whole and taking a common sense approach. *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019)("The court applies a common-sense reading to the entirety of an ALJ's decision."); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). That, of course, cuts both ways. This case is one of those where the ALJ, while not ignoring regulations and SSRs, might have taken a common sense approach when ticking off the many impairments plaintiff suffers from, one impinging on the next, and nevertheless finding she could perform medium work for 8 hours a day, 5 days a week.

The plaintiff is a 57-year-old woman who has already worked most of her life at medium or heavy jobs. After decades of that, the body tends to break down. The ALJ found she had several severe impairments: arthritis in her neck, back, and knees; bone spurs in her heels; rotator cuff issues in her shoulders. She is also obese, with a BMI of about 38. Despite all that, the ALJ found plaintiff could do work that required her to stand or walk all day, every day. Not only that, but this work would also require her to lift up to 50 pounds occasionally – up to one third of every day – and 25 pounds frequently – up to two thirds of every day. And, as if that were not enough, the ALJ found she could also climb, kneel, crouch, and crawl for up to two thirds of every day.

So, to review: the plaintiff is 57 years old with a BMI of 38. She has bulging discs in her lower back, moderate degenerative arthritis in her neck, arthritis in both knees, heels spurs, and shoulder problems; and yet, she is able, according to the ALJ – every day, five days a week – to crawl around or kneel most of the day. She is able to heft fifty pounds from time to time every day, and frequently – most of every day – lift and carry twenty-five pounds. She can somehow climb – ropes, scaffolding, whatever – two-thirds of every day. When one stops and thinks about it, accepting it is a challenge. Simply put, the ALJ's RFC finding requires a leap of logic that puts one in mind of the Seventh Circuit's critique of a similarly fanciful RFC conclusion in *Goins v. Colvin*, 764 F.3d 677, 682 (7th Cir. 2014):

> If we thought the Social Security Administration and its lawyers had a sense of humor, we would think it a joke for its lawyer to have said in its brief that the administrative law judge "accommodated [the plaintiff's] obesity by providing that she could never [be required as part of her work duties to] climb ladders, ropes, or scaffolds, and could only occasionally climb ramps or stairs, balance, kneel, crawl, stoop, and/or crouch." (The administrative law judge must have forgotten that the primary consulting physician thought the plaintiff can crawl and crouch at work.) Does the SSA think that if only the plaintiff were thin, she could climb ropes? And that at her present weight and with her present symptoms she can, even occasionally, crawl, stoop, and crouch?

764 F.3d at 682. The court was, in a similar situation, a bit more gentle in *Allensworth v. Colvin*, 814 F.3d 831, 835 (7th Cir. 2016): "That sounds too strenuous for someone of the plaintiff's physical condition." The same goes here.

One supposes that the way the ALJ got from all those impairments to a virtually unlimited capacity for medium work was by failing to take into account the combined effect of all those impairments. An ALJ has to consider the *combined* effects of the applicant's impairments, including impairments that considered one by one are not disabling. *See, e.g., Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); *Denton v. Astrue*, 596

11

F.3d 419, 423 (7th Cir.2010). As already indicated, plaintiff has a number of severe impairments, and they are of the type that impinge on one another, with a cumulative effect that is greater than the sum of each one considered in isolation. In light of that, the ALJ's explanation was superficial at best:

> Due to arthritis in the knees, lumbar degenerative disc disease, calcaneal spurs in the feet, the claimant is limited to medium exertional work. She is further limited to only frequent overhead reaching due to her shoulder impairments and cervical degenerative disease, and she has the above postural limitations due to obesity contributing to her overall impairments.

(R. 25). Obviously, it makes no sense to say *because* a person has severe bone spurs in both of her heels, moderate arthritis in her knees, and bulging discs in her lower back, she can stand and walk all day carrying 25 pounds around. It makes even less sense when you add obesity to the mix. *See, e.g., Allensworth v. Colvin*, 814 F.3d 831, 833 (7th Cir. 2016)(". . . fact that the plaintiff's obesity is "a condition that could aggravate his back, knee . . . ."). Plus, the ALJ thought (inexplicably) the plaintiff could *also* crawl and/or kneel for up to five or six hours a day.

There was certainly evidence to the contrary with which the ALJ had to deal. *See Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021); *Spicher v. Berryhill*, 898 F.3d 754, 758 (7th Cir. 2018) She did not do so, at least not convincingly. For example, the ALJ rejected the October 2016 opinion from plaintiff's treating physician that plaintiff was severely restricted in terms of lifting due to her torn rotator cuff because Dr. Nam's own records indicated she *later* improved. (R. 24). But that rationale doesn't hold up to scrutiny. If the ALJ thought plaintiff could lift 50 pounds later on, what did she think about the period Dr. Nam was talking about? After all, she didn't say Dr. Nam's assessment was invalid at the time it was given.

Plaintiff tore her rotator cuff in June 2016. A course of physical therapy offered little

improvement and Dr. Nam imposed those work restrictions four months into treatment. Shoulder injections did not help, and Dr. Nam performed surgery in February 2017. Obviously, plaintiff had to undergo additional physical therapy thereafter. Dr. Nam's records began to speak of improvement in June 2017, and by August of 2017, plaintiff was ready for work conditioning. Right there was a twelve-month period where not even the ALJ quarreled with the doctor's limitations. Wouldn't that have to have been considered as qualifying the plaintiff for at least a period of benefits? 20 C.F.R. § 404.1509; *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). And, that would still only account for the plaintiff's shoulder. What about her neck and lower back? Her knees? Her feet?

So, this case must be remanded so that the ALJ may provide a clear rationale that allows a reviewing court to trace the path of her reasoning from the evidence – evidence of several severe impairments – to the RFC. Obviously, a neutral observer may not necessarily think that plaintiff is disabled, and might wonder why the ALJ simply did not find her capable of sedentary work, or even light work. The likely reason is the elephant in the room: plaintiff's age. *See Dimmett v. Colvin*, 816 F.3d 486, 488 (7th Cir. 2016)("One might think that even though [s]he can't do medium work [s]he can do light or sedentary work. But h[er] age makes the distinction between medium and light work critical: a person of h[er] age who has no skills transferable to light or sedentary work is presumptively disabled."). At 57 years old at the time the ALJ found her not disabled, plaintiff was a person of advanced age under the Commissioner's regulations. 20 C.F.R. § 404.1563(e). If a claimant is of advanced age, and has "a severe impairment(s) that limits [her] to sedentary or light work, [the Commissioner] will find that [she] cannot make an adjustment to other work unless [she] ha[s] skills that [she] can transfer to other skilled or semiskilled work . . . ." 20 C.F.R. §

13

404.1568(d)(4). So, perhaps the ALJ felt hemmed in by the regulations and the Grid. None of this is to say that the ALJ was simply wrong, just that she failed to explain her reasoning adequately given the evidence.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [Dkt. #23] is denied, and this decision is remanded to the Commissioner.

**ENTERED:** _/s/ Jeffrey Cole_
**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 7/6/21